Case 1:21-cr-00085-GLR   Document 7-1   Filed 02/24/21   Page 1 of 12

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
8:57 am, Feb 24 2021
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

JGW/ZBS: 2021R00046

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN THE MATTER OF A CRIMINAL COMPLAINT AGAINST SCOTT SCREEN, ROBERT BASCOM, MEREDITH BALL JR., AND ANDRE BROWN | Case No. _____<br>1:21-mj-485 TMD<br>1:21-mj-486 TMD<br>1:21-mj-487 TMD<br>1:21-mj-488 TMD |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin Ermer, Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

1. This Affidavit is submitted in support of a Criminal Complaint for Scott Gregory SCREEN; Robert Paul BASCOM, Meredith BALL Jr., and Andre Levern BROWN. As detailed below, there is probable cause to believe that, from in or about May of 2020 through on or about February 17, 2021, Scott Gregory SCREEN, Robert Paul BASCOM, Meredith BALL Jr., and Andre Levern BROWN violated 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute one kilogram (1000 grams) or more of a mixture or substance containing a detectable amount of Heroin and 400 grams or more of a mixture or substance containing a detectable amount of Fentanyl, which are both Schedule I controlled substances. The maximum penalty for this offense is life imprisonment, a fine of $10,000,000, and at least five years of supervised release. A mandatory minimum sentence of ten years is also applicable to this offense.

2. There is also probable cause to believe that Meredith BALL Jr. violated 18 U.S.C. § 922(g), Felon in Possession of a Firearm. The maximum penalty for this offense is ten years of imprisonment, a fine of $250,000, and three years of supervised release.

3. I have been a member of the Maryland Transportation Authority Police Department since 2005. In April 2008, I became a Detective in the Criminal Investigations Division and was subsequently assigned as a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") HIDTA Group 51. I have been serving as a TFO with the DEA since March 28, 2011. Thus, I am an "investigative or law enforcement officer . . . of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. As part of my law enforcement training, I successfully completed a seven month entrance level training course in criminal investigations while attending the Maryland Transportation Authority Police Academy. Additionally, I have received over 40 hours of training in drug/narcotics enforcement, recognition, street packaging, and controlled dangerous substance ("CDS") Paraphernalia while attending Maryland Transportation Authority Police Academy. I have also received 100 hours of specialized training in proactive criminal interdiction, to include narcotics trafficking, identifying hidden compartments, patrol drug investigations, narcotics surveillance investigation, drug identification, hotel/motel criminal interdiction (Drugs & Prostitution), and airport drug interdiction; and have received training in vehicle theft investigations by the Baltimore City Police RATT TEAM (Vehicle Theft Task Force).

5. My training has also included instruction in Criminal Law, Probable Cause, Search and Seizure Techniques, Use of Informants, Surveillance Methods and the Constitutional Rights of Citizens. During my seven years on duty, I have made over two hundred (200) arrests, and participated in over one thousand (1,000) arrests involving CDS Violations, felony and misdemeanor theft investigations, vehicle thefts, assaults, domestic violence, fraud, firearms, etc. in addition to approximately 100 traffic and fugitive arrests. I have also participated in the writing

and execution of numerous Search & Seizure warrants. Additionally, I know based on my training, knowledge and experience that drug traffickers commonly use vehicles to pick up and deliver drugs; meet with drug customers, sources and co-conspirators; transport drugs and proceeds to stash locations and transport money to suppliers or third-parties to pay for the drugs. I am familiar with the use by drug dealers of homes and residences rented or held in the names of other individuals, as well as the use of storage lockers and warehouses to store large inventories of marihuana.

6. I have interviewed many drug traffickers and learned from those interviews the various means and methods of traffickers. I have successfully completed the three day CDS training seminar presented by the United States Drug Enforcement Administration. During my tenure as a Police Officer, I have arrested numerous persons for violations of the CDS laws. I have also seized large amounts of heroin, cocaine, marijuana, and various other substances controlled by the State of Maryland.

7. I have participated in the execution of numerous search and seizure warrants, which have yielded large amounts of CDS and have led to the arrests of numerous persons for violations of the CDS laws. I have testified in CDS prosecutions in the Circuit and District Courts of Maryland. In addition, through my investigative experience, I know that persons involved in the illegal distribution of CDS keep and maintain records of their various activities. Experience in similar cases has established that such records are regularly concealed in a suspect's automobile, residence, office, on his person, in warehouses and storage lockers, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books,

notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators.  The aforementioned items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their person, where they have ready access to them. I know that drug traffickers often have several residences decreasing the likelihood of detection by law enforcement.

8. I have set forth only the facts I believe are necessary to establish probable cause for the issuance of a criminal complaint.  The information contained in this Affidavit is based upon my review of reports and documents, physical surveillances, observations, interviews and investigative activity by myself and other law enforcement officers.

9. For the past several months, DEA Baltimore has worked on an investigation into a drug trafficking organization that operates in Baltimore, Maryland and elsewhere.  In furtherance of the investigation, DEA Baltimore has collaborated with DEA New York, DEA Washington and other investigative agencies.  Based on the investigation to date, DEA has identified Scott Gregory SCREEN, Robert Paul BASCOM, Meredith BALL Jr., Andre Levern BROWN and other persons as members of the conspiracy.

10. On February 8, 2021, the Honorable Thomas M. DiGirolamo of the United States District Court for the District of Maryland authorized search and seizure warrants for, among other locations and vehicles, the residences of SCREEN, BASCOM, and BALL.  Those residences are 10000 Town Center Avenue, Apt. 362, Columbia, MD (Screen), 3700 Toone Street, Apartment 1115, Baltimore, MD (Bascom) and 509 Park Avenue, Apartment 3B, Baltimore, Maryland (Ball

Jr.).  These search warrants were executed on February 17, 2021, and seizures made of currency, heroin, and fentanyl and other drug evidence.

       11.     During this investigation, extensive physical and electronic surveillance has been conducted on the four individuals referenced above.  Based on this information, as well as other information supplied by other investigators, I believe that SCREEN and BASCOM acquired, stored and distributed multi-kilogram quantities of heroin and fentanyl.  SCREEN and BASCOM stored large amounts of heroin and fentanyl and drug proceeds at their residences (10000 Town Center Avenue, Apt. 362, Columbia, MD (Screen) and 3700 Toone Street, Apartment 1115, Baltimore, MD (Bascom)).  Large amounts of the heroin and fentanyl are provided by SCREEN and BASCOM are distributed by BALL Jr. to various customers from the vicinity of his residence at 509 Park Avenue, Apartment 3B, Baltimore, Maryland. BROWN is a courier of drugs and money, frequently traveling from the New York City area with heroin and fentanyl and returning to New York with drug proceeds in the hundreds of thousands of dollars.  Brown has been observed on numerous occasions in Baltimore as well as New York, in the company of SCREEN and BASCOM, and also traveled to BALL Jr.'s residence on Park Avenue.  SCREEN and BASCOM have traveled often to New York, and have delivered drug proceeds to Asian money launderers at locations in Baltimore and New York.

       12.     On October 1, 2020, investigators in New York City intercepted a Baltimore-based courier with three kilograms of heroin.  The heroin was destined for Baltimore, and your affiant believes that this heroin was to have been delivered at 509 Park Avenue, Baltimore, MD, which is where BALL Jr. resides.  Had the courier not be intercepted in New York, he/she was to have arrived in Baltimore around 6PM on October 1st. Investigators observed SCREEN, BASCOM and BALL Jr. meeting together in front of 509 Park Avenue.  Based on my knowledge, training and

experience, I believe they were waiting the arrival of the courier, and they eventually disbanded when no courier arrived.

13. On February 17, 2021, your affiant received information from investigators in New York that Andre Levern BROWN was travelling south to Maryland from New York. Based on past experience and observations, I believed BROWN was transporting narcotics. Surveillance agents located BROWN and followed him to BASCOM's residence at 3700 Toone Street, Apartment 1115, Baltimore, MD. Investigators observed BROWN carry a backpack inside BASCOM's residence, as well as a black shopping bag. Pursuant to the above-referenced search warrant, investigators entered BASCOM's residence. Upon entry into the Toone Street exterior door, Andre BROWN attempted to flee. Investigators observed BROWN's black and grey book bag sitting on the living room couch. There were bundles of U.S. Currency, rubber bands and additionally U.S. Currency spread out all over the floor and chair in close proximity to the book bag. Investigators have observed BROWN get off the Megabus from New York, and travel to BASCOM's residence with the same book bag on at least two occasions, January 27, 2021, and again on February 17, 2021. Investigators observed BROWN on a separate occasion (February 6, 2021) get off the Mega Bus from New York and traveled to BASCOM's residence with a weighted black and red, squared off shoulder bag.



14.     Investigators then made entry to BASCOM's residence and both BROWN and BASCOM were located inside. A search was conducted and the following items were located inside BASCOM's residence:

  a. A large amount of U.S currency from the living room floor;

  b. Apple I-Phone;

  c. A drug tally and debt sheet/ledger in Andre BROWN's backpack on the living room couch.

  d. Unknown amount of U.S. Currency, located on a shelf in the master bedroom.

  e. Grocery bag containing a large amount of suspected fentanyl, weighing approximately 1,136 grams, located on the master bedroom nightstand.

  f.     Four cellular telephones, located on the master bedroom bed.

  g. Additional currency located in various location inside the premises.

    h. One tablet, various keys and a folder containing miscellaneous paperwork, located on the master bedroom floor that was in the name of Robert BASCOM. Numerous prescription bottles in BASCOM's name were also present.

15. On February 17, 2021, investigators from DEA Group 51 and Howard County Police Department executed the search and seizure warrant at 10000 Town Center Avenue, Apartment 362, Columbia, MD (the residence of Scott Gregory SCREEN). SCREEN was not home at the time. Investigators conducted a search of the apartment which resulted in the seizure of the following:

    a. Multiple large plastic bags containing various white and off-white powder substance, estimated to be between 1000-2000 grams accumulatively, which was seized from the kitchen pantry. At least one of the bags yielded a positive preliminary test result for the presence of fentanyl;

    b. Multiple components from a hydraulic kilo press were also seized from the kitchen pantry;

    c. Two money counting machines were located and photographed, which were in the hallway closet;

    d. Two banded bundles of U.S. Currency were seized from the bottom of two suit bags within the hallway closet (Estimated to be $10,000.00 to $20,000.00)

    e. At least 8-10 digital scales were located and photographed throughout the apartment;

    f. A weight calibration kit was seized from a crown royal bag within the kitchen pantry;

    g. Two food saver machines and food saver rolls were located and photographed on the kitchen counter and kitchen cabinet;

    h. Investigators located and photographed numerous documents listed in the name of Scott SCREEN, with an address of 4201 Bedford Road, Pikesville, MD.

    i. Investigators located and photographed hundreds of prescription bottles, which were in the name of Scott SCREEN.

1. Investigators also searched the residence of Meredith Ball Jr. at 509 Park Avenue, Apartment 3B, Baltimore, MD. Ball Jr. was present for the search. BALL Jr. was read his Miranda Rights and cooperated fully with investigators. BALL Jr. told investigators that he possessed a firearm that was located in the living room area. Investigators then located a Taurus .38 Caliber Revolver, Serial number 6589, loaded with 4 rounds of ammunition. Investigators believe this firearm was manufactured outside of the State of Maryland and therefore affected interstate commerce. BALL Jr. also admitted to having approximately 125 grams of heroin, a half ounce of cocaine, crack cocaine, cutting agent, and heroin pills which were seized throughout his apartment. BALL Jr. stated that the gun was old, but he bought it from a person he knew from the street. BALL Jr. is a convicted felon and has not had his civil rights restored. I know BALL Jr. has a criminal history including convictions in Maryland State Courts for handgun possession in 1988, CDS Possession in 1989, CDS Unlawful Manufacturing in 1990, Distribution of Cocaine in 1991, CDS Attempted Conspiracy in 1993, CDS Unlawful Possession in 1995, CDS Conspiracy in 1995, CDS Possession with intent to distribute in 1998, and possession of heroin with intent to distribute in 2001. Ball Jr. is therefore prohibited from possessing firearms including those that travel in interstate commerce.

16.     As a result of the search and with the assistance BALL Jr., investigators seized the following items from throughout the residence:

   a. approximately 104 grams of a brown chunk substance suspected heroin within a red bin in the living room;

   b. approximately 18.2 grams of a white chunk substance suspected cocaine, within a yellow can on the living room fireplace mantle;

   c. approximately 27 grams of a white powder substance, suspected cutting agent and 4.9 grams of suspected heroin, within the living room closet;

   d. approximately 138 grams of a white powder substance which BALL Jr stated was mannitol and quinine, within the living room closet;

   e. 18 capsules containing an off-white powder substance, suspected heroin;

   f. A glassine bag with approximately 12 individual zip lock bags of a white rock substance, suspected crack cocaine and another bag with approximately 4.5 grams of suspected crack cocaine, which was located on the bedroom dresser shelf;

   g. A large amount of U.S. Currency was seized from the living room and bedroom areas, which BALL Jr admitted was between $80,000.00 and $100,000.00.

17.     During a search of BROWN's book bag on February 17, 2021, investigators found a sheet of loose-leaf paper which was immediately recognized and a drug/money collection ledger, which is also sometimes referred to as an 'owe' sheet. Based on my knowledge, training, and experience, this ledger is a documentation of quantity of drugs distributed to individuals in weights such as 300 grams, 480 grams, 500 grams, and 500 grams. The distributors are labeled in coded abbreviation, and the documentation also reflects money owed and/or already collected from

individuals in Baltimore and Tennessee. The ledger also shows documentation of expenses paid for travel, cabs, and other public transportation, in addition to money owed to BROWN for his cut, which is labeled as "3000 Mines." The rear side of the ledger documents 6-whole and 800g, which your affiant believes refers to 6 kilograms and 800 grams of narcotics. Also on the rear side of the ledger, it documents during February, over $60,000 is owed from Baltimore and $23,300 is owed from City.



18.     Based on my knowledge, training and experience, the surveillance conducted throughout this investigation, the volume of heroin and fentanyl seized in New York and Maryland, the drug paraphernalia seized from BALL Jr.'s residence and SCREEN's residence, the currency delivered to ASIAN money launderers and seized from various locations as described herein, the drug 'owe' sheet recovered from BROWN, I believe that the heroin and fentanyl acquired, stored and seized was intended for distribution, and, further, that the quantities involved in the conspiracy referenced herein exceeded 400 grams or more of a mixture or substance containing a detectable amount of fentanyl and exceeded 1000 grams of a mixture or substance containing a detectable amount of heroin.

19. As a result of the above described information, there is probable cause to believe that Scott Gregory SCREEN; Robert Paul BASCOM, Meredith BALL Jr., and Andre Levern BROWN violated 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute one kilogram (1000 grams) or more of a mixture or substance containing a detectable amount of Heroin and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, which are both Schedule I controlled substances. There is also probable cause to believe that Meredith BALL Jr. violated 18 U.S.C. § 922(g), Felon in Possession of a Firearm.

WHEREFORE, I respectfully request that the Court authorize the attached Criminal Complaints.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Task Force Officer Kevin Ermer
Drug Enforcement Administration


Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __23__ day of February, 2021.

_____
Hon. Thomas M. DiGirolamo
United States Magistrate Judge

12